HOUSTON ICE & BREWING COMPANY v. KEENAN.

No. 1416.    Decided May 25, 1905.

**Illegal Contract—Lease for Saloon—Prohibition.**

When, after premises were leased for three years "for the saloon business," prohibition was adopted in the county by an election held under the "local option" law, though the stipulation as to the business to be conducted be considered a covenant by the lessee, the fact that such business was rendered unlawful by the result of the election did not relieve him from his obligation to pay the rent; the law being in existence when the lease was made, he should have provided in the contract against the contingency of its being put in force in the county if he wished relief from his obligation in that event. (Pp. 79–82, 86.)

Question certified from the Court of Civil Appeals for the Fifth District, in an appeal from Ellis County.

The opinion of the Court of Civil Appeals was as follows:

TALBOT, ASSOCIATE JUSTICE.—On the 9th day of June, 1902, appellee by written contract leased to appellant a certain building in Waxahachie, Ellis County, Texas, for the term of three years, to begin June 1, 1903. Appellant agreed to pay as rent for the use of said building the sum of $2,100.00 in quarterly installments of $175.00 each. It was stipulated in the lease "that said premises shall be used for the saloon business." After the execution and delivery of the lease and before the term thereof began an election was ordered by the Commissioner's Court of Ellis County, under what is known as our "local op-

tion" statute, and held throughout the county, to determine whether or not the sale of intoxicating liquors should be prohibited in that county. The election resulted in favor of prohibition and local option became effective in said county on October 11, 1902. Appellant claimed that the stipulation in the lease that the demised premises should be used for the saloon business constituted an express covenant that said premises should be used for no other purpose, and that, inasmuch as such use became illegal by the adoption of local option in Ellis County, it was absolved from liability for the agreed rent. Taking this view of the matter appellant notified appellee that it could not carry out the agreement, refused to occupy the leased building or to pay the rent.

Appellee insisted on the validity of the lease contract, tendered the building and demanded payment of the rent in accordance with the terms of the contract, which being refused this suit was brought to recover the first installment thereof. Judgment having been rendered for appellee, appellant appeals.

We think it must be conceded that the stipulation in the lease that the premises should be used for the saloon business amounted to a covenant on the part of appellant to use them for no other purpose. The particular use to which the building was to be put having been specified, a restriction against other uses will be implied and the lease need not contain an express covenant imposing such restriction. In such case the lessor may invoke the preventive powers of a court of equity to restrain the lessee from making any use of the premises inconsistent with the terms of the contract. DeForest v. Byrne, 1 Hilton (N. Y.), 43; 18 Am. & Eng. Ency. Law, 635, Title Leases, subtitle, "Express restriction upon the use;" 1 Taylor on Landlord and Tenant, 494; Spalding Hotel Co. v. Emerson, 72 N. W. Rep. (Minn.), 119.

Having restricted the use of the building to the "saloon business" or sale of intoxicating liquors, the question is presented: Was the lease contract terminated and appellant absolved from liability for the rents therein agreed to be paid, by reason of the adoption of local option in Ellis County? In so far as we are advised this question has not been passed upon by any of the courts of this state. The general rule has been broadly stated to be, that where the performance becomes impossible subsequent to the making of the contract the promisor is not thereby discharged. But to this general rule there is a well established exception viz: that where the performance becomes impossible by a change in the law the promisor is discharged. The facts, however, in our opinion do not bring the case at bar within the exception. Nor does it become necessary to apply the general rule stated in all its rigor to justify the conclusion we have reached. For the purposes of this case it may be asserted that when a party voluntarily undertakes and by contract binds himself to do an act or thing, without qualification, and performance thereof becomes impossible by some contingency which should have been anticipated and provided against in the contract, the nonperformance will not be excused. In such case the party's failure to exempt himself from responsibility in the event of the happening of the contingency will be attributable to his own folly and he will be held to make good his contract.

Applying these latter principles, we think that the prohibition of the sale of intoxicating liquors in Ellis County under our local option statute furnishes appellant no legal excuse for its failure to pay the rent sought to be recovered in this action. The stipulated use to which the demised premises were to be put was entirely legal when the lease contract was executed. That such use might become illegal was a probability well known to appellant at that time. The statute authorizing and under which the sale of intoxicating liquors was prohibited in Ellis County had been enacted and was an existing law at the time the lease was made. It was only necessary for the people to pursue the course pointed out by its provisions in order to put the law in operation in that county and avail themselves of its benefits. This event appellant must have known was likely to occur, and that if it did the performance of the stipulation in the lease under discussion would be prohibited.

Appellee had no interest in the business to be conducted in the leased building and appellant knew that by a vote of the people under the existing statute referred to, the "saloon business," which included the sale of intoxicating liquors, might be prohibited before the beginning of the lease term. This was a probable contingency which an ordinarily prudent man should have foreseen and provided for in his contract, and having failed to so do he took the risk upon himself and must abide the consequences. In the English case of Newby v. Sharpe, 8 Ch. Div., 39, the defendant let the basement of a store to the plaintiff "with full and undisturbed right and liberty to store cartridges therein and covenanted to keep the premises in proper repair and condition so as to be available for storing cartridges, and also covenanted for quiet enjoyment." Plaintiff took possession of the demised premises and stored cartridges in them. Other parts of the store were at that time let to other persons for storing gunpowder. Soon afterwards the Explosive Act, 1875, passed, making it illegal to store cartridges and gunpowder in the same building, and prescribing heavy penalties for a violation thereof. Upon the passage of this act, the defendant lessor, removed the cartridges which had been placed in the store to another building and notified plaintiff that in order to protect himself from liability he could be compelled to notify the authorities if he, plaintiff, stored other cartridges in the leased premises. This course was pursued by defendant solely to avoid subjecting himself to the penalties of said act, and at all times he stated to plaintiff that the rented premises were at his disposal. Plaintiff, the lessee, however, claimed an eviction and sued to restrain defendant from obstructing the storing of his cartridges and for damages. It was held that plaintiff could not recover and that judgment must be entered for defendant; the court, among other things, making the following observation: "At the time when the lease was granted, both parties were aware that there was pending in Parliament a bill to make further regulations as to the storing of explosive substances, and if plaintiff intended to be guaranteed by defendant against any effect which such regulations might have on his use of the demised property he ought to have insisted upon having stipulations for that purpose inserted in the lease. He did not do so but chose to take the risk." We think it is manifest from the opinion

in the above case that the pendency of the bill in Parliament and the knowledge of that fact by the "plaintiff" when he procured a lease of the premises, exercised controlling influence with the court in the conclusion reached. The facts in the case at bar present stronger reasons for the enforcement of the contract sued on than those in the case from which the above quotation is made. Here the law, by which the intended use of the rented property was prohibited had been actually passed by the Legislature, was a valid and subsisting statute, and such statute and the action taken under it resulting in the prohibition of appellant's business in Ellis County were presumably in contemplation of the parties when the lease in question was made.

In addition to the case of Newby v. Sharpe, supra, the following cases may be cited as instructive, if not directly in point: Rosenbaum v. United States Credit System Co., 64 N. J. L., 34, 44 Atl., 966; Dewey v. Alpena School Dist., 43 Mich., 480; Tweedie Trading Co. v. Jas. P. McDonald Co., 114 Fed. Rep., 985; Moseley v. Baker, 2 Sneed (Tenn.), 362; Bryan v. Spurgin, 5 Sneed (Tenn.), 680.

Appellant's proposition that the performance of a contract is excused by a supervening impossibility caused by the operation of a change in the law, is correct; but it is believed there has been no such change in the law since the lease in question was executed as would authorize the application of that principle in this case. We see no valid reason for not applying in this case the fundamental maxim, that "as a party binds himself so shall he be bound."

Believing that the proper judgment was rendered in the court below the same is affirmed.

Opinion delivered January 7, 1905.

*J. L. Gammon, Baker, Botts, Parker & Garwood* and *Don A. Bliss,* for appellant.—A recital in a lease of the purpose for which the premises are demised, constitutes an express covenant on the part of the tenant to use them for no other purpose. Am. & Eng. Ency. Law, vol. 18, p. 635, "Express Restrictions on the Use;" Taylor on Landlord and Tenant, vol. 1, p. 494, note 2; De Forest v. Byrne, 1 Hilt. (N. Y.), 43; Addison on Contract, vol. 1, p. 1312; Spalding Hotel Co. v. Emerson, 72 N. W. (Minn.), 119; De Forest v. Byrne, 1 Hilton (N. Y.), 43; Dodge v. Lambert, 2 Bosw., 570; Maddox v. White, 4 Md., 72; Frank v. Brunneman, 8 W. Va., 462; Stewart v. Winters, 4 Sanf. Ch. (N. Y.), 502; Hodson v. Cappard, 29 Beav., 4; Kirkpatrick v. Peshine, 24 N. J. Eq., 206; Ganett v. Albree, 103 Mass., 373; Mayor v. Pattison, 10 East., 130; Brouwer v. Jones, 23 Barb., 153; White v. Naerup, 57 Ill. App., 114.

No contract can be carried into effect which was originally made contrary to the provisions of the law, or which, being made consistent with the rules of the law at the time, has become illegal by virtue of some subsequent law. Accordingly performance is excused by a supervening impossibility, caused by operation of a change in the law. Tay v. Ecker, 6 Civ. App., 191; Cyclopedia Law and Procedure, vol. 9, pp. 629 and 630; Beach on the Modern Law of Contracts, vol. 1, pp. 279 and 225; Anson on Contracts, p. 427; Bishop on Contracts, p. 574; Wharton on Contracts, pp. 488 and 305; Addison on Contracts, pp.

482 and 327; Gates v. Goodloe, 101 U. S., 612; Jamieson v. Indiana Gas Co., 12 L. R. A., 652.

If the court is without power to enforce the contract as a whole, it will not attempt to enforce one part of it. Wegner v. Biering, 65 Texas, 506; Seeligson v. Lewis, 65 Texas, 215, 75 Am. Rep., 593; Reed v. Brewer, 90 Texas, 144; Edwards County v. Jennings, 89 Texas, 618, affirming (Texas Civ. App., 1895) 33 S. W. Rep., 585; Kottwitz v. Alexander, 34 Texas, 689; Rayner Cattle Co. v. Bedford, 91 Texas, 642.

The rights and duties of the parties who signed the contract sued upon are to be tested solely by the terms of the contract, and it is not the law that the court should presume that some duty rested on one of the parties which is not embraced in the contract.

*G. C. Groce,* for appellee.—By the lease agreement in controversy appellee granted to appellant an estate for years, commencing in futuro, in the property to which the lease applied, and even if the use of the property was restricted to a particular business, the restriction was for appellee's benefit, and could be waived by him; furthermore the stipulated use was legal when the contract was made, while both parties knew that it might be prohibited before the expiration, or even the beginning, of the lease term, and if appellant was unwilling to take the chance of such prohibition, it should have protected itself by express agreement.

Appellee was not interested in the business to be carried on on the leased premises, nor was it, from a legal standpoint, anything to him whether such business should, or should not, be actually carried on on such premises. Both parties knew when the lease was made that the contemplated business might be prohibited even before the beginning of the lease term, and appellant saw fit to take the chance of such prohibition. The prohibition of the use to which rented, or hired, property is to be put does not render the contract of rental, or hire, illegal, when the lessor or hirer is not interested in the use. Tweedie Trading Co. v. Jas. P. McDonald Co., 114 Fed. Rep., 985.

While appellant's second proposition that performance of a contract, illegal when made, or made so by subsequent law, is excused, is correct, it has no application to this case. Here the contract in question was entirely legal when made, as was also the use to which the leased premises were to be put; the contract has never been made illegal, but by force of laws existing when it was made, and which, presumably were in contemplation of the parties, and by appropriate action under such laws, the contemplated use of the rented premises was prohibited, which was a risk assumed by appellant in the absence of a stipulation to the contrary.

Assuming that the stipulation that the leased premises should be used for the saloon business amounted to an implied covenant against any other use, this would be at most only a covenant, and not a condition of the lease. There was no stipulation of forfeiture for breach of such covenant, and none would be implied. Johnson v. Gurley, 5 Texas, 222.

BROWN, ASSOCIATE JUSTICE.—This is a certified question from the

Court of Civil Appeals of the Fifth Supreme Judicial District. The statement and questions are as follows:

"The judgment of the court below, in the above entitled cause, was affirmed on a former day by the present term of this court, but upon further consideration of the case on appellant's motion for a rehearing, we deem it advisable to present to the Supreme Court of the state of Texas, for adjudication, the following issues of law arising upon the appeal.

"STATEMENT:

"On the 9th day of June, 1902, appellee, by written contract, leased to appellant, who was engaged in the manufacture of ice and sale of ice and beer and intoxicating liquors, a certain building in Waxahachie, Ellis County, Texas, for the term of three years, to begin June 1, 1903. Appellant agreed to pay as rent for the use of said building, the sum of $2,100 in quarterly installments of $175 each. Said contract is as follows:

" 'The State of Texas, County of Ellis.

" 'This lease, made on the —day of ————, 189—, between R. A. Keenan, of the first part, and H. Hamilton, Prest. Houston Ice and Brewing Co., of the second part, witnesseth: That said party of the first part, in consideration of the rents and covenants hereinafter contained, and by said party of the second part and their assigns to be paid and performed, do hereby grant, demise and lease to the said party of the second part, their executors, administrators and assigns, the following described premises: Brick building in the rear of Waxahachie National Bank on the east side of Franklin Street, Waxahachie, Texas.

" 'The present lease to Jake Cohen in building is assigned to Houston Ice and Brewing Company, unexpired term of which is fourteen months from April 1, 1902.

" 'To have and to hold the same, with the appurtenances, unto the said party of the second part, their executors, administrators and assigns from June 1, 1903, for and during the full term of three years next ensuing, and fully to be completed and ended by June 1, 1906, they, the said lessees holding and paying therefor during said term the sum of twenty-one hundred dollars, to be paid in the following manner, to wit: One hundred and seventy-five dollars quarterly.

" 'Provided, however, that if said rent, or any part thereof, shall remain unpaid for ten days after it shall become due, and without demand made therefor; or if said lessees shall assign this lease or underlet said leased premises or any part thereof, or if the said lessees interest shall be sold under execution or other legal process without the written consent of said lessor, his heirs or' assigns, first had, then and in that event and at the option of the owner of the premises described above, the whole amount remaining unpaid under this lease shall at once become due and payable, and it shall be lawful for said lessor, or his agents, heirs or assigns without notice or demand, reenter said premises and have the same again, repossess and enjoy, as in his first and former estate, and thereupon this lease and everything therein contained on the said lessor's behalf to be done and performed, shall cease, determine and be utterly void.

" 'And said lessees for their executors, administrators and assigns covenant and agree with the said lessor, his heirs and assigns as follows: That is to say, that said lessees will pay said rents in the manner aforesaid, that they will not do or suffer any waste therein, that they will not assign this lease or underlet said premises or any part thereof, without the written consent of said lessor, or his agents, and at the end of said term, they will deliver up said premises in as good order and condition as they are now, or may be put by said lessor, reasonable use and ordinary wear and tear thereof excepted, and they will not use any gasoline or coal oil stoves in said leased premises, and further for the said rents to be paid by said lessees and assigns, a lien is hereby reserved upon the property hereby leased, the interest of said lessee and assigns in the same, and the property of said lessee upon said premises, in favor of said lessor, his heirs and assigns, prior and preferable to any and all other liens thereupon whatsoever. It is agreed and understood that this contract provides for ten percent of amount involved as attorney's fees in case the same is collected by suit, and lessee agrees that same shall be entered as part of judgment.

" "The said lessees herein waive all notices which by law are required to be served upon  .  .  .  in the event of any suit of ejectment or forcible detainer be brought. All repairs upon said property herein leased during the time that the same may be leased, shall be at the expense of said lessees, for damages done by said lessee, to any part of said leased premises, and no alteration shall be made to said premises without the consent of said lessor or his agents, and said lessor for his heirs, executors, administrators and assigns covenant and agree with said lessee their executors and administrators, that said lessee paying the rents and observing and keeping the covenants of this lease on their part to be kept, shall lawfully, peaceably and quietly hold, occupy and enjoy said premises during said term, without any let, hindrance, ejection or molestation by said lessor or his heirs, agents or any person or persons lawfully claiming under this contract.

" 'And it is agreed that said premises shall be used for the saloon business.

" 'In witness whereof, said parties have hereto set their hands on the day and year first above written.

Witness.                                    R. A. Keenan.
                                    Houston Ice and Brewing Co.'

"At the time of the making of the foregoing lease appellant took an assignment from appellee of his rights as landlord of an unexpired lease, which had been granted to one Jake Cohen, the unexpired term of which was, at that time, fourteen months from April 1, 1902. After the execution and delivery of the lease and before the term thereof began an election was ordered by the Commissioner's Court of Ellis County, under what is known as our "local option statute," and held throughout the county, to determine whether or not the sale of intoxicating liquors should be prohibited in that county. The election resulted in favor of prohibition and local option became effective in said county on October 11, 1902, and has continuously remained in force since that date. Appellant claimed that the stipulation in the lease,

that the demised premises should be used for the saloon business, constituted an express covenant that said premises should be used for no other purpose; that such use became illegal by the adoption of local option in Ellis County, and by reason thereof it was absolved from liability for the agreed rent. Taking this view of the matter appellant notified appellee that it could not carry out the agreement, and refused to occupy the leased building.

"Appellee insisted on the validity of the lease contract, at all times recognized defendant's rights thereunder, and tendered the building to appellant at the beginning of the lease term and demanded payment of the rent in accordance with the terms of the contract. Appellant refused to receive the building or to pay the rent and this suit was brought to recover the first installment thereof. A jury being waived the trial court filed conclusions of fact and found, among other things, in effect, that the lease to Jake Cohen of the building in question, was in writing, was dated June 1, 1900, and was for a term of three years, beginning on that date; that said Cohen's lease provided, "that said premises shall be used for mercantile and no other purpose," that it further provided as follows: "It is also agreed in the event of prohibition being carried in this town Jake Cohen is permitted to cancel this lease." These conclusions of fact found by the court are not attacked. Judgment having been rendered for appellee, appellant appeals.

"QUESTION 1.

"Did the stipulation in the lease contract, 'that said premises shall be used for the saloon business' constitute a covenant on the part of appellant that it would use the land and premises for that particular purpose and operate as an implied restriction against other uses?

"QUESTION 2.

"Was the lease contract rendered illegal, and appellant absolved from liability for the rents therein agreed to be paid by reason of the adoption of local option in Ellis County subsequent to the execution of said contract, prohibiting the sale of intoxicating liquors in said county?"

To both questions we answer: assuming that the stipulation referred to in the first question "constitutes a covenant" nevertheless the contract of lease was not "rendered illegal," nor was appellant absolved from liability for rents "by the adoption of local option in Ellis County." The opinion of the Court of Civil Appeals clearly states reasons which are satisfactory to this court and that opinion is adopted and directed to be published with these answers.