San Antonio Brewing Association v. W. R. Brents.

Decided May 17, 1905.

**1.—Contract—Lease—Clause Added—Construction.**

It would seem that the terms of a clause added to a contract of lease, by the parties, after the lessor signed the instrument and before signature by the lessee, should prevail over provisions in the writing as originally drawn inconsistent therewith.

**2.—Lease—Saloon Business—Adoption of Local Option Law.**

A lease which recited that the building was let for the purpose of conducting a first-class saloon, "and shall not be used for any disreputable purpose," and providing that the premises should not "be sublet for any purpose other than for conducting a saloon, without the consent of the landlord in writing," did not limit the use by the lessee to saloon purposes nor release him from liability for rent after the adoption of prohibition of that business under the Local Option Law.

**3.—Landlord and Tenant—Breach—Damages—Findings.**

Findings of the court on damages for breach of contract of lease by tenant considered and held to sustain amount of recovery on the theory that the measure was the difference between the rent contracted for and the rental value for the unexpired term.

Appeal from the District Court of Grayson County. Tried below before Hon. J. M. Pearson.

*Don. A. Bliss,* for appellant.—That appellee should furnish to appellant the enjoyment of the use of the leased premises for the purpose stipulated in the lease contract during the term, being the material consideration for the promises of appellant to pay rent during said term and performance of this consideration by appellee having been rendered impossible by a change in the law, the consideration for appellant's promise to pay rent during the balance of the term failed and appellant was thereby exonerated from further performance. Savage v. Whitaker, 15 Me., 24; Benson v. Ketchum, 14 Md., 331.

Where a tenant or a subtenant of a tenant is deprived of the possession and beneficial enjoyment of a material part of the leased premises by the procurement of the landlord, this is such an eviction by the landlord as will justify the tenant in abandoning the leased premises and in declaring the lease contract at an end. Randall v. Alburtis, 1 Hilt (N. Y.), 285; Waite v. O'Neil, 76 Fed. Rep., 408; Williams v. Yoe, 54 S. W. Rep., 614; Warren v. Wagner, 75 Ala., 188; Tallman v. Murphy, 120 N. Y., 345; Alger v. Kennedy, 49 Vt., 109; Burns v. Phelps, 1 Stark, 94 (2 E. C. L. 44); Ogden v. Sanderson, 3 E. D. Smith (N. Y.), 166; Smith v. McEnany, 170 Mass., 26; Pendill v. Eells, 67 Mich., 657; 11 A. & E. Encyc. Law, p. 463, par. 3; Bentley v. Sill, 35 Ill., 414; Jackson v. Eddy, 12 Mo., 209; Crommelin v. Thiess, 31 Ala., 412; Grabenhorst v. Nicodemus, 42 Md., 236; Rowbotham v. Pearce, 5 Houst. (Del.), 135.

If the lease contract had still been in existence and if there had been any such breach thereof by appellant as would authorize any recovery of it of any damages by appellee, his measure of damages would have been the difference between the cash value of the rental stipulated in the contract and the cash rental value of the leased premises for the portion of the term unexpired at the time of the breach. Massie v. Bank, 32 S. W. Rep., 797; Scottish American Mfg. Co. v. Taylor, 74 S. W. Rep., 564; Dulin v. Knechtel, 51 S. W. Rep., 350; Jamieson v. Indiana Nat. Gas & Oil Co., 12 Law. Rep. Ann., 652; Buffalo E. Side Street R. Co. Ry. v. Buffalo, St. R. Co. Ry., 2 Law. Rep. Ann., 384; Sauner v. Phoenix Ins. Co., 41 Mo. App., 480; Brick Presbyterian Church v. City of N. Y., 5 Cow., 538; Baily v. De Crespigny L. R. 4 Q. B., 180; Anson on Contract, 315; Baylies v. Fettyplace, 7 Mass., 324; Cordes v. Miller, 39 Mich., 581; People v. Globe Ins. Co., 91 N. Y., 174.

The performance of the terms of the lease contract by both parties thereto being possible and legal under the law at the time said contract was made and the performance of that part of the contract which required the premises to be used for the purpose of carrying on a saloon, that is, the conducting of the retail sale of intoxicating liquors, having been rendered illegal and impossible in contemplation of law by the adoption and putting in force of the Local Option Law of the State, forbidding the sale of intoxicating liquors within the limits of the county where the leased premises were and are situated, appellant, the promisor, was thereby exonerated from performance. White v. Naerup, 57 Ill., App., 114.

The provision in the lease contract, that "The building is leased to the lessee for the purpose of conducting a first class saloon . . . nor shall said building be sublet for any purpose other than for con-

ducting a saloon, without the consent of the landlord in writing," constituted a condition, by which each party was bound.

*Wolfe, Hare & Maxey,* for appellee.—Appellant was not deprived of the use of the premises for any reputable or legal purpose by the adoption of the local option law, hence its adoption constitutes no defense to plaintiff's suit and the court did not err in sustaining appellee's special exception to that part of appellant's answer setting up the adoption of the Local Option Law of the State in Grayson County, Texas.

The rights of the parties are to be determined by the contract; and there being no stipulation in the contract against such contingency as the adoption of the Local Option Law, its adoption did not exonerate appellant from the performance of the contract and the trial court properly held that the putting into effect in Grayson County, Texas, of the Local Option Law of the State of Texas, prohibiting the sale of intoxicating liquors in said County, did not have the effect to annul or terminate the lease contract and constituted no defense to appellee's suit. Woods Landlord and Tenant, 1130-1135; Lynch v. Ortlieb, 70 Texas, 727; Kerley v. Mayer, 31 N. Y. Supp., 818.

Upon appellant's abandonment of the leased premises and its refusal to pay rent, appellee was entitled to recover, as damages, for the breach of contract, the present value of the difference between the contract price of rent and the reasonable market rental value for the unexpired portion of the term. Buck v. Morrow, 2 Texas Civ. App., 361; Kempner v. Heidenheimer, 65 Texas, 588; Massie et al v. State National Bank, 32 S. W. Rep., 797.

KEY, Associate Justice.—October 17, 1901, Martin Gauldin, as owner and lessor, entered into a written contract with the San Antonio Brewing Association as lessee, by the terms of which a certain house and lot in the city of Sherman, in Grayson County, Texas, were leased for a term of five years, beginning October 21, 1901, for a consideration of $4,500, payable in monthly installments of $75 each. Thereafter Gauldin sold the property to W. R. Brents, and on February 26, 1902, a supplemental contract was made which, in effect, substituted Brents for Gauldin as owner and lessor in the original contract.

It was the understanding of the parties that the property would be used as a retail liquor saloon; and the Brewing Association subleased it and it was used for that purpose until it became unlawful to do so. As the result of an election previously held, what is known as the Local Option Law went into effect in Grayson County on the 20th day of January, 1904, by which it became and still is unlawful to sell intoxicating liquors in that county. The Brewing Association paid the rent up to March 21, 1904, and refused to pay for any other portion of the term of the lease. In fact, soon after the Local Option Law went into effect the Brewing Association announced its intention to abandon the rented premises and remove therefrom certain property placed there by it. On the 4th day of February, 1904, Brents sued out a distress warrant upon the ground that the Brewing Association "was about to remove its property from said rented premises." The distress warrant was returned to the District Court, where Brents, as plaintiff, filed a

voluminous petition and the San Antonio Brewing Association, as defendant, filed a voluminous answer. The case went to trial, resulting in a judgment for the plaintiff for $922.65, and the defendant has appealed.

The trial judge filed findings of fact, some of which are assailed in this court. We have examined the record and find testimony supporting the findings complained of. The main defense relied on, which was overruled in the court below and is urged with zeal in this court, is the contention that the adoption of the Local Option Law released appellant from the lease contract. The contention is that the contract restricted the use of the leased premises to a saloon for the sale of intoxicating liquors; and that, when such use became unlawful by the adoption of the Local Option Law, appellant could not lawfully perform all the terms of the contract, and for that reason should not be held bound thereby. As originally written, dated and signed by the lessor, the contract contained this paragraph:

"6th.—It is understood that the building is leased to the lessee for the purpose of conducting a first-class saloon and shall not be used for any disreputable purpose, nor shall any nuisance be permitted on the premises, and in case the lessee shall violate this provision, the owner may cancel the lease and take possession in the manner specified in paragraph three of this contract. It is further understood that the lessee shall have the privilege of subletting the premises, provided that no part of same shall be sublet for any disreputable or illegal purpose or to any disreputable parties; nor shall said building be sublet for any purpose other than for conducting a saloon without the consent of the landlord in writing."

However, before the contract was signed by appellant as lessee, the following was added:

"6th.—It is understood that the building is leased to the lessee for the purpose of conducting a first-class saloon, and shall not be used for any disreputable purpose, nor shall any nuisance be permitted on the premises, and in case the lessee shall violate this provision, the owner may cancel the lease and take possession in the manner specified in paragraph three of this contract. It is further understood that the lessee shall have the privilege of subletting the premises, provided that no part of same shall be sublet for any disreputable or illegal purpose other than for conducting a saloon, without the consent of the landlord in writing."

This latter paragraph of the contract is treated in appellant's brief as a repetition of the sixth paragraph; but, if correctly transcribed in the record, the provisions in the two are essentially different. In the first, it is stipulated that the premises shall not be sublet for any disreputable or illegal purpose, or to any disreputable parties; nor for any purpose other than conducting a saloon, without the written consent of the lessor; while in the second, subletting is expressly authorized for any legal and reputable business without the consent of the lessor. This latter having been added to and constituting the last stipulation in the contract, should perhaps be held to control the former paragraph requiring written consent of the appellee, in order for appellant to sublet the premises for other use than conducting a saloon. At any rate, the latter is in conflict with the former and leaves it in doubt as to what

restrictions are intended to be placed upon the power to sublet which the contract expressly confers upon the lessee.

But, aside from the conflict between the two paragraphs, and testing the defense referred to by the construction that should be given to the former paragraph considered by itself, we are of the opinion that the adoption of the Local Option Law did not release appellant from the obligations imposed by the lease contract. The language, "It is understood that the building is leased to the lessee for the purpose of conducting a first-class saloon," etc., was not, in our opinion, placed in the contract for the purpose of creating a limitation which would deny to the lessee the right to use the property for any other purpose. The business to which the lessee intended to devote the premises was known to the lessor, and, no doubt, the latter, for his own benefit, desired to obligate the lessee to so conduct the business as to cause the least detriment to the premises and not otherwise injure the lessor. A restriction was intended, not as to any legitimate business, but only as to the manner of conducting the contemplated business. Hence we conclude that the adoption of the Local Option Law did not deprive appellant of the beneficial use of the premises, nor release it from the lease contract. If the contract was as restrictive as contended, and denied appellant the right to use the premises for any other purpose, then a different question would be presented; but such is not the case, and we express no opinion on that subject. Our views on the question presented and decided are supported by authority. (Kerley v. Mayer, 31 N. Y. Supp., 819.)

Appellant alleged that the distress warrant was wrongfully and maliciously sued out, and by plea in reconvention sought to recover damages therefor. The court below held that the warrant was properly sued out, and decided against appellant on its plea in reconvention. Several questions are presented bearing on that phase of the case, but we believe the trial court ruled correctly, and overrule all assignments of error relating to that subject.

The trial court rendered judgment for the plaintiff for $55, the value of certain fixtures belonging to him and removed by the defendant, and for $867.65 for the breach of rental contract, and it is insisted that the correct measure of damage was not applied for the breach of the contract. In appellant's brief it is contended that "the difference between the cash value of the rental stipulated in the contract and the cash rental value of the leased premises for the unexpired portion of the term at the time of the breach, is the correct measure of damages."

We think the rule contended for by appellant supports the judgment. The findings of fact show that the contract was breached March 21, 1904; that the reasonable rental value of the premises during the remainder of the term (from March 21, 1904, to October 21, 1906) was $45 per month, or $30 per month less than the contract price; and the trial judge also found as a fact that "the difference between the present worth of the contract price of said premises for the unexpired term of said lease and the present worth of the reasonable rental of said premises for the unexpired part of said lease is $867.65, and that plaintiff by reason of a breach of the lease contract has been damaged in this sum."

Conceding the correctness of appellant's proposition of law, it seems to us that the findings referred to support the judgment.

Some other questions are presented in appellant's brief, which we deem it unnecessary to discuss in this opinion. They have all been considered, but our conclusion is that no reversible error has been shown, and the judgment will be affirmed.

*Affirmed.*

Writ of error refused.